Abel Acosta
Clerk
P O Box 12308
Austin, Tx 78711

71,460-04
2-22-15

RE: NO. WR-71,460-04
Robert Brown III

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 25 2015

Abel Acosta, Clerk

Dear Mr. Acosta

Can you please file my Objections to the Finding of Facts & Conclusion of Law to the Trial Court. Can you please present this to the Judge's so they can consider it with my 11.07 Application.

Sincerely,

Robert JL RB

Contact info
Robert Brown- 1398098
Robertson
12071 FM 3522
Abilene, Tx 79601

NO. 05-307-K277B

Ex Parte   § IN THE 277ᵗʰ JUDICIAL
  § DISTRICT COURT OF
Robert Brown III   § WILLIAMSON COUNTY, TEXAS

## OBJECTIONS TO STATE'S PROPOSED ORDER

## I. Evidentiary Hearing Is Necessary

A "Live" Evidentiary Hearing is necessary because the Habeas Judge (Judge Mathews) & the D.A. (Jana Duty) is new & wasn't apart of the Original Trial. According to Nethery v. Collins 993 F2d 1154 it states that because the State Habeas Judge was not the Judge @ the State Trial, the "PAPER" Hearing was not an "ADEQUATE" & "FAIR" Hearing. There are several controverted facts that need to be resolved. Namely why the STATE now wishes to seal the police records so the Applicant doesn't have access to the Williamson County Sheriff's Police Report & the Austin Police Dep'T's Report from my arrest. When those two reports are in dispute & they refuse to allow me to have access to them even in a redacted form. All personal info I already know because Donita Bell was my fianceé & her son was my step-son. A question that needs to be answered is why the A.P.D. report wasn't introduced @ trial since they were the one's to file charges. Why did no one from A.P.D. testify since they filed the charges? Why was I never called in for questioning? Why was I never arrested till after they waited ten months to get a indictment. Then the D.A. stated that Quentin says that he made no out cry of sexual abuse by any person in the police report for assault by contact with the Williamson

County Sheriff's Dept. However, they won't say if it states that in the Austin Police Dept. If you refer to (Exibit A) My trial attorney Russell Hunt Jr. states in his Pre-trial notes A.P.D. (Austin Police Dept) Deer Park = Quentin & 3 boys sexually assaulted @ School. So, the D.A. Jana Duty is misleading the courts to believe that there is no such police report that the alleged victim Quentin never made a accusation against kuhn. His own Mother Donita Bell testifies in (RR V-178) that Quentin came home & said to her & myself "Oh yeah by the way I was molested @ school today" Then in (RR V 174-175) Donita states that Garren Kuhn rubbed up against Quentin & made gyrations, Then in (RR VI-55) Hunt ask Quentin-Robert had a talk with you about good touches & bad touches & how important to go tell some adult & authority if someone is touching you in a way that you didn't want to be touched. Do you remember that conversation? Quentin-"yes". Hunt-was that a result of this incident with the kid in school? Quentin "yes". Hunt-Robert took you to the hospital to have you checked out? Quentin- "yes". Hunt-Robert was very upset about the fact that Garren had done this stuff to you? Quentin-"yes" Then in (RR VI 40-41) Quentin stated that Robert took him to the hospital to have him checked out & to press charges. Donita also testifies that we took him to the Child Advocacy Center in Austin, Tx (Orion Treatment Center) to be interviewed regarding Garren Kuhn sexually touching Quentin. Also that Quentin & the 3 other boys made a statement to the principal. See if you refer to the Criminal Record Activity Sheet you'll see that the D.A. subpoena the Custodian of Records for Deer Park Middle School to appear on 8-14-06 @ 9 a.m. However, they never showed up & so another one was issued on 8-15-06 & still a no show. The Statement to the principal was crucial evidence to my case. Since the child & D.A. are stating that he never made a accusation like this before. When his

when his own Mother Donita & Myself both state that he did make that accusation. The question that needs to be answered is why would his mother & Myself both take him to the E.R. to be checked out & to the Child Advocacy Center if it was just a bullying accusation with NO touching? Why would Quentin state I took him to the E.R. to be checked out so we could press charges on Garren if there was no touching? See, the D.A. Jana Duty & Judge Mathews have not "quoted" from the "record" not one time. The reason being is that they weren't apart of the original trial proceedings nor apart of the D.A.'s office in 2006. I've quoted directly from the record to back up My claims. So, neither one can judge credibility. Then in Ex Parte Ghahremani 332 S.W.3d 470 (2011) states that the 14th Amendment due process principles were violated in a trial for aggravated sexual assault because impact testimony from the teenage victims parents created a misleading impression of the facts by omitting other events, glossing over the time between the assault & intensive therapy, & attributing all of the harm to the assault. Found that the Police Report was material to the case favorable to the Applicant & surpressed by the State in violation of Brady. Analysis of Due Process Claim - the knowing use of perjured/false testimony is a trial error that is subject to a harmless error analysis. See, if you refer to (Exibit A) My trial attorney Russell Hunt Jr.'s Pre-trial notes he has a heading APD (Austin Police Dept.) Deer Park Middle School = Quentin & 3 boys sexually assaulted @ school. The officer that stated that was Officer Michael Rhone on 5-20-04. The initial report on Garren kuhn was Made with A.P.D. @ the Emergency Room. So, just like in My case there is two reports. However, the D.A.'s office is saying no there isn't when you clearly can see from My attorney's pretrial notes that there was a report. Why didn't officer Rhone not testify @ trial nor Reynolds or Cochran if one of them were the ones that filed the charges against me

With the Williamson County D.A.'s office, I never knew that they were the ones that filed the charges. Because @ trial the only report that was tendered was the one by Sgt Hugley.[3] as you can clearly see that they (WCSO) never filed the charges. So, the question would be is why the D.A.'s office is trying to seal both reports on me after 11 years. When they know that I need those reports to prove my innocence. I'm stating that I didn't know that A.P.D. was the agency that filed the charges against me. Especially since I never had a chance to question them. Another reason for the Evidentiary Hearing is because the State claims in their proposed order #34 that confusion about dates also doesn't show perjury, That Applicant's allegations that the alleged victim conflated or confused some dates[3] timelines over a multi-month period of abuse does not establish the use of perjured testimony. I'm claiming either false or perjured testimony. See, the accusation is for Count 1-December, Count 2-January, Count-3 February, Count-4 March, Count 5-April[3] Count 6-May. So, for each count/month you must find that I committed offense code 21.11. The evidence[3] the record will show that I should've been found not guilty on atleast Counts one which is December[3] count 2 which is January, I brought this issue up in my 1st 11.07 application. However, the State never responded to the accusation. Testimony shows that I didn't move in til Dec 5th[3] that his cousin Danny stayed with us for the month of Dec. Refer to (RRV-270) Quentin states that the 1st time that I touched him @ his house wasn't right after I moved in but awhile afterwards. Then he states in (RRVI-61) that no touching occurred in the month of Dec'03 when his cousin Danny stayed with us from Ohio. Then in (RRVI-62) Quentin states that no touching occurred in Jan'04 when his two sister's stayed with us for that month.

This was such a big issue with the jurors that if you refer to (CR-83) where they sent a letter to Judge Anderson stating that they were in disagreement about Quentin's testimony regarding the sexual contact in the Month of Dec. & Jan when his cousin Danny & two sisters stayed with us. Well Judge Anderson never notified me nor my atty of this question refer to (RR IX-480) which is a violation of Art. 36.28. Then Judge Anderson never gave them the testimony they requested. I didn't know this till I recv'd my trial transcripts. Once again according to T.C.C.P. 38.14 - provides that reconciliation of conflicts & contradictions in the evidence is within the province of the jury. However, the jury never had that opportunity. I brought this issue up in my 1st A.D.7 & once again the State failed to respond to this allegation. This allegation is definately a controverted fact that needs to be resolved. See, Judge Anderson was convicted in Nov. 2013 for withholding evidence & tampering with gov't records & was disbarred & given 10 days in jail. <u>Ghahremani</u> 332 S.W.3d 471 (C.C.A 2011) States Materiality - the knowing use of false testimony violates due process when there is a "reasonable likelihood" that the false testimony affected the outcome. The "reasonable likelihood" standard is equivalent to the standard for constitutional error which "requires the beneficial of a constitutional error to prove beyond a reasonable doubt that the error complained of didn't contribute to the verdict obtained. Knowledge of the police report was sufficient to alert the State that the testimony from Quentin was misleading. Then refer to Texas Digest - Habeas Corpus key 754 Court of Criminal Appeals is not bound by a habeas Judge's findings, conclusions, or recommendations when they aren't supported by the record. The habeas Judge nor the D.A. was in position to make a credibility judgement with a "Paper" Hearing since neither was apart of the original trial proceedings & none of their conclusions are supported by the record

Fourth would be the false testimony by the alleged victim Quentin Monroe Austin Jr. & his Mother Donita Bell. If you refer to (RR VI-240) it will show his Cousin Danny stayed with us from Dec 9th til the 29th & that I didn't move in till Dec. 5th. Then in (RR V-270) Quentin stated that the 1st time I touched him @ his house wasn't right after I moved in but awhile after I moved in. Then if you refer to (RR VI 61-62) it will show that Quentin states that "NO" touching occurred while his cousin stayed with us in Dec. & also No touching while his two sister's stayed with us for the month of January. This was such a big issue with the jurors that if you refer to (CR-83) it shows the jurors asked Judge Anderson (who has now been disbarred for withholding evidence & tampering with Gov't Records) & it states "We disagree about the testimony of Quentin Monroe Austin Jr. concerning the dates that the sexual contact happened. We need the part of his testimony where he talks about Dec. & Jan. Then if you refer to (RR IX 84-86) you'll see that Judge Anderson "NEVER" notified me nor my attorney of this 2nd question. Which is a violation of Art 36.28 & never gave them that testimony. Had they received that testimony then they would've found me not guilty on atleast counts 1 & 2. The question would be why the STATE won't respond to this charge. Donita States in (RR V-178) that Quentin came home & said "Oh by the way Mom I was "Molested @ school today" that Quentin & the other boys made a statement to the principal & that she also took him to the Child Advocacy Center in Austin, Tx. His Mother couldn't have come up with that on her own. Then Sgt Huskey with the Williamson County Sheriff's Dept testified to the following:

in (RR V-199-220) that he arranged a recorded telephone call from Bell to Applicant. That Applicant didn't admit to Sexual Misconduct or impropriety with the Complainant during the recorded conversation. That he went to the location of the Complainant's residence to look for evidence & no physical evidence corroborating the complainant accusations was recovered ~~was~~ from the residence. That the complainant was nervous & uncomfortable during his interview @ the Children's Advocacy Center. That he "NEVER" obtained a arrest warrant for the Applicant upon the completion of his investigation. That he "NEVER" interviewed Shirley Williams during the course of his investigation or during the 2 yrs prior to trial, When she was the child's grandmother & shared the same small 10×12 room with him & was in the room & awake during the alleged touching that was going on 4-5 days per week for 6 months @ 5am. So, the question that needs to be answered would be what new info did the Austin Police Dept come up with. Something that needs to be hashed out @ a Evidentiary Hearing. Then also Ms. Starnes asked Quentin in (RR VI-22) if Robert ever touched you on any other body part that made you feel uncomfortable & he said "NO" Did he ever ask you to touch him in anyway? "NO" Also did he ever say anything or threaten you not to say anything or make you not tell? "NO" Then another uncontroverted fact is that Quentin's grandmother Shirley was in the room & awake during the alleged touching. Quentin states in (RR VI 85-86) that there is nothing blocking the view from his grandmother's bed to his & that she doesn't have any mental problems & that she isn't hard of hearing. Then in (RR V-155) Quentin's mother stated on the stand that Ms. Williams head was faced sort of toward the opposite wall so their heads were in opposite direction to one another. Also that Shirley is just like every mother; she's got

a Mother's ears, nose & she notices what's going on. Also that Shirley was laying in bed in a position to observe what Quentin is doing in his bed. So the question that needs to be answered is why she was on the State's witness list but never brought back from Ohio to testify on her grandsons behalf if the accusation was true. Because in U.S. v Wilson 322 F.3d 353 (2003) it state's a party's failure to call available witnesses or produce evidence that would clarify or explain disputed factual issues can give rise to a presumption that the evidence if produced would be unfavorable to that party. In Townsend v Sain 83 S.Ct 745, 756-57 there can't even be the semblence of a full & fair hearing unless the State Court actually reached & decided the issues of fact tendered by the Applicant. As such when the State Court didn't resolve a fact issue that would entitle Applicant to relief if resolved in his favor, the Applicant is entitled to a evidentiary hearing. Then in Hibbler v Benedetti 693 F.3d 1140, 1146 Petitioner never had a fair chance in State Court to have the relevant facts heard & determined. The State Court's fact finding procedures have been found to be faulty under (D)(2) of (AEDPA) when the State failed to accept as true factual allegations that were neither incredible on their face nor clearly refuted by the record; or failed to hold a "LIVE" hearing where those facts, accepted as true satisfied the basic relief requirements. Nurles v Ryan 706 F.3d 1021, 1038-40 States purported determination of the facts without a fair opportunity for petitioner to present evidence violates AEDPA. I need the hearing to prove my actual Innocence Claim, Brady Violation & False Testimony.

# II. Findings of Fact

1. The Court again has reviewed & finds credible the affidavit of Russell Hunt Jr, trial counsel for the Applicant, which was Submitted previously to this Court in response to Applicant's 1st Application for Writ of Habeas Corpus. How can they find it credible when the D.A. Jana Duty nor Judge Stacey Mathews weren't part of the Original trial proceedings. I will show by trial testimony how his affidavit was Perjured. Mr Hunt States that Ms. Williams was not in a position to see anything inappropriate. If you refer to (RR VI 85-86) Quentin States nothing is blocking the view from his grandmother's bed to his. Then in (RR V-152) Quentin's mother stated that Ms. Williams head was faced Sort of toward the opposite wall so their heads were in opposite direction to one another. Also that Shirley is just like every Mother, She's got a Mother's ears, nose & She notices what's going on. Also that Shirley was laying in bed in a Position to observe what Quentin is doing in his bed. That testimony right there refutes everything Mr. Hunt Says. He also states she was ill, However her daughter Donita testifies that she was getting around great & running them over.

2. Mr. Hunt States that Ms. Williams was Suspicious of the Applicant. That can be refuted if you refer to (RR VI-87) Hunt- All right And before, you told your Story, your grandma Shirley never came up to you & Said. "What is Robert doing coming in your bed every Morning?" She never said anything like that to you did she?

Quentin "NO"

None of these statements by Mr Hunt was in his pretrial notes that the court has been provided a copy of.

3. Hunt claims that Ms. Williams testimony would have, if anything would've helped the State. Well if you refer to (Ex. A) you'll see that there is nothing that shows that he ever talked to Ms. Williams. It does show that he talked to the A.D.A. Jane Starnes; She states that Grandma saw nothing; that Jane "NOT" bringing her down. Also that Donite (shirley's daughter) has talked to Granny (shirley); knows she saw nothing. This is the same day that Mr. Hunt told me that she wasn't going to be testifying that he couldn't get a deposition from her.

4. Hunt claims that he didn't review Quentin's school records because I told him that he was a good student with no disciplinary record @ school. Well once again that was false because if you refer to the letters I wrote to Mr Hunt on 7-6-06, 7-25-06, the Time Line of Events; also refer (RR VI-67) Hunt- Early 2ⁿᵈ Semester of the school yr were there some occasions that Robert actually came to your school; sat in on some of your classes

Quentin- Yes

Hunt — And do you know why that was

Quentin - Because I was acting up

H — What do you mean acting up

Q — Sometimes I would be talking while the teacher was talking

H — Ok just being the class clown sort of

Q- Yes

H - Were there ever any incidents @ school where you would say de-pants another kid, pull his shorts down or something like that

Q- Yes

H- Robert sat in your classes to keep you from getting in trouble @ school

Q-Yes

H - Did that work? Did you stop getting in trouble

Q- Yes

So, the question would be how did Mr Hunt claim I told him that Quentin had no disciplinary issues @ school? When it clearly shows from the record; exibits that, that was a false statement. So, if the D.A.; Judge Mathews would've been apart of the original trial proceedings, they would've seen that his entire affidavit was false

& why neither one of them are in the position to judge Mr. Hunt's credibility without holding a "LIVE" evidentiary hearing. Those records were important to show the statement that Quentin made along with the 3 other kids

5. Mr. Hunt stated that he couldn't recall how many jurors that he struck peremptorily. However, he can all of a sudden remember what Ms. Williams told him 3yrs later. When he has no pretrial notes written down regarding their conversation

6. The State did commit a Brady Violation with the A.P.D. report on Garren Kuhn & the one with the W.C.S.O.

7. The State never disclosed the A.P.D. report on myself. Nowhere in the record does it show that it was. Also no one from A.P.D. testified to their report & why they "Never" brought me in for questioning & why they never interviewed the child's grandmother (Shirley Williams). When testimony shows that she was in the room that was 10x12 & awake during the alleged touching that was going on 4-5 days per week for 6 months @5am. The State can't answer why she didn't testify when she was on their witness list.

8. The State can't answer why Donita was under the impression that her son Quentin was grabbed through his clothes & touching his penis by Garren Kuhn. The State won't produce the records that would either confirm Quentin's claims or refute his claims. There is definately controverted facts that needs to be hashed out @ a "Live" evidentiary Hearing. Those records are part of my Brady Claim & plus the State is trying to seal the police reports so I can't prove my claims.

9. Yes, Applicant was aware of Judge Anderson not giving the jurors the pertinent testimony that they requested & was a violation of Art. 36.28 in my 1st/11.07 application. If Judge Mathews & the State D.A. Jana Duty were apart of the 1st 11.07 they would've seen I did bring the issue up but wasn't answered

So, as you can see the State nor Judge Mathews can quote from the record because they weren't apart of the original trial proceeding nor the 1st 11.07 proceeding. The question that needs to be answered why A.P.D. filed the charges against me when W.C.S.O. had the actual jurisdiction & were the ones to conduct the investigation. The State claims that the false testimony/unknowing-use has been available. However, according to Chabot 300 SW3d 768 (T.C.C.A. 2009) it states that Chabot was the 1st case in which we explicitly recognized an unknowing-use dueprocess claim; therefore, that legal basis was unavailable @ the time Applicant filed his previous application. See Tex Code Criminal Procedure 11.07 § 4(a)(1) "A conviction procured through the use of false testimony is a denial of the due process guaranteed by the Federal Constitution." It doesn't matter whether the prosecutor actually knows that the evidence is false; it is enough that he or she should've recognized the misleading nature of the evidence. The record does show that the testimony, taken as a whole, gave the jury a false impression. Here applicant contends that the testimony was material, arguing that the jury would've assessed a not guilty verdict on @least counts 1 & 2 if not all six counts. The trial court's findings were'nt supported by the record, which is why a "Live" Evidentiary Hearing is needed to sort out all the controverted issues, Since the D.A. Jana Duty & Judge Mathews can't do it with a Paper Hearing because neither one was apart of the original trial nor the original habeas proceeding. Then Aldrich v State 104 S.W.3d 890 (2003 T.C.C.A) Denial of absolute, systematic requirements which don't require a timely & specific objection to raise for the 1st time on appeal, include jurisdition of the person, jurisdiction of the subject matter & a penal statute's.

8/9/06

Robt Brown — chg Jane: chld pg to 1x 3yrs...
→ Shirley Wm's → ☎ 513-742-4050

Grandma — was an alcoholic, sleep all the time
[ says she never saw anything
[ Jane not bringing her down
[ Q: ment health, illeg law, grandma well

⚡ Bonita — has talked to Grandma ⚡ knows she saw nothing

Officer rpt.
5/21 report HPD → sheriff → APD. ☎ mo'ly police
Pete they contacted Wheaton (CPS)    not to come home
met at CAC ... CPS report...              (back up)
Mom boy friend B → Observed video interview. Occured yesterday.
  - prev. contacted D + D: chg re: not bail.
IX D= nearly caught by grandma = secretly heal
Play w/ ... 1x D pull pants off + then occurs in LR w/ son
IX mak dres w/o clothes (?)
Q pain hurt — ... as Q tch/ed him. Nt look @ b.
  D= around 1/03; + the morning 5/05; no sex ☎ any w/ b/o brown.
  - anyone @ work told to keep — other bf 'abuse him the way b
Bonita told D nt to go into bathroom bc made him feel uncomfort
  — IV will = ☎ D about to speak Q- makes
Recorded phone call e sheriff ℓt. Left msg; call bck D plan take
  - D say in AM — Q has chg ☎ nt most. Dng steeling; mother inty
right there. Dng crazy, won allege other b. ck. Q.
  - D: Robt comes in stch h playing + plays w/ him
  - D: 1X D ast not aware endearm... fuck off from Q nt b-bed
  - Q told me: D stays w/him ☎ while she goes. D: say's affection time.

5/3
Grandma    ltr of Jane:
  D= also left voice mail = "sorry so pain came to ☐
                            going to end my life"
  D has never committed mind bf
  D contacted his mom 4/7: indicated mom bck.
  4/04 — never able to contact D or family.

───────────────────────────

8/8/06
Hamilton

chs Jane Hansen
not willing to make any offer
D kicked out ☐ sx off treatment
b/c not going

8/8
Q d + Bro                                    (2)

  - "departing" 2x — ☐ hotly died
  - 2 d cold = Q on phone. D drink everything
  [ incident when D exit pours ☐ + then ☐ turns b jal ]
Apt: premsin light ... comforter collected...
  D cleft + foam.
Cardom report re: comforter = no positive result

CPS report
  ☐ finally sleeting many ... Dec '03. material.
  D tell him chg to raise wt.
⚡ Mother told re "material interest" + why Q: RR.
  Clearliatchy after = to plain.
✦ APD — 5/20 Phone
  dispatchd ... D not present... "actively inclient" held back.
  D say's D= yeah + finally almost any
⚡ D at park = D + 3 boys STAD ☐ D @ school.
  D tell go into bathroom w/ D; straight w/o pants; D tele D play w/ him
  etc. Ok... ast nt got in bed ...
  Current CPS... Called D= allegation sent return

Vict. sues
  Bonita = ☐ does not wnt, ever.
  Bonita = ☐ to female + has Vegas.
    D + Q used to be very close + had lots of things w/ Q.
    Was very surprised to find that something had happened to ☐ + D.
⚡ [ ☐ won't go to counseling ]
  Jane btw dffr. D class call up; ☐ → kicked him out... txt msg sacir, ☐
  went to Las Vegas... ☐ left sorry for sxpain he caused... going back/still

                                                Ex: A